IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KIFA MUHAMMAD,

        Plaintiff,                  No. CIV S-02-0006 LKK CMK P

        vs.

SAN JOAQUIN COUNTY JAIL, et al.,

        Defendants.        FINDINGS & RECOMMENDATIONS

_____/

      Plaintiff is a state prisoner proceeding pro se in this civil rights action against San Joaquin County Jail, Baxter Dunn, San Joaquin County Sheriff, and Kristen Hamilton[1] for civil rights violations.   This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72-302(b)(21).

      On January 20, 2006, the undersigned filed findings and recommendations finding that plaintiff had failed to set forth specific facts which show that there is a genuine issue for trial and recommending that defendants' motion for summary judgment be granted.  (Doc. 67.)  On March 31, 2006, the district court declined to adopt the findings and recommendations and

---

[1]Also named in plaintiff's amended complaint were Guard—Desoto and Stan Hein, Facility Manager Inmate Case Worker.  Desoto and Hein were dismissed from the case, without prejudice, on September 29, 2004. (Doc. 26.)

1  remanded this matter to the undersigned for further proceedings consistent with the order. (Doc.

2  70.) Accordingly, the court considers defendants' arguments for summary judgment based on

3  municipal liability and qualified immunity.

4  **I.      Background**

5          Plaintiff brings this action alleging violation of his First Amendment right to free

6  exercise of his religious beliefs.   Plaintiff was incarcerated at the San Joaquin County Jail at all

7  times relevant to his complaint.   Plaintiff is a practicing Muslim and, in keeping with his Islamic

8  faith, observes Ramadan, which requires fasting from sunup to sundown.   Ramadan lasts for thirty

9  days.  Plaintiff states that he requested jail officials to make accommodations to allow him to eat

10 after sundown during Ramadan in 2001.  However, plaintiff alleges that jail officials ignored his

11 request for accommodation and, when they did provide bag meals, did so for only a couple of

12 days.  Plaintiff also alleges that jail officials refused to provide Friday services for Muslims.

13 **II.     Standard of Review**

14         Summary judgment is appropriate when it is demonstrated that there exists "no

15 genuine issue as to any material fact and that the moving party is entitled to a judgment as a

16 matter of law."  Fed. R. Civ. P. 56(c).  Under summary judgment practice, the moving party

17              . . . always bears the initial responsibility of informing the district court of
                the basis for its motion, and identifying those portions of "the pleadings,
18              depositions, answers to interrogatories, and admissions on file, together
                with the affidavits, if any," which it believes demonstrate the absence of a
19              genuine issue of material fact.

20 Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the

21 nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment

22 motion may properly be made in reliance solely on the 'pleadings, depositions, answers to

23 interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered, after

24 adequate time for discovery and upon motion, against a party who fails to make a showing

25 sufficient to establish the existence of an element essential to that party's case, and on which that

26 party will bear the burden of proof at trial.  Id. at 322.  "[A] complete failure of proof concerning

2

1  an essential element of the nonmoving party's case necessarily renders all other facts immaterial."

2  Id.  In such a circumstance, summary judgment should be granted, "so long as whatever is before

3  the district court demonstrates that the standard for entry of summary judgment, as set forth in

4  Rule 56(c), is satisfied."  Id. at 323.

5  　　　　　If the moving party meets its initial responsibility, the burden then shifts to the

6  opposing party to establish that a genuine issue as to any material fact actually does exist.  See

7  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

8  establish the existence of this factual dispute, the opposing party may not rely upon the

9  allegations or denials of its pleadings but is required to tender evidence of specific facts in the

10  form of affidavits, and/or admissible discovery material, in support of its contention that the

11  dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party

12  must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

13  of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986);

14  T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and

15  that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict

16  for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

17  　　　　　In the endeavor to establish the existence of a factual dispute, the opposing party

18  need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

19  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

20  versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

21  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

22  genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

23  committee's note on 1963 amendments).

24  　　　　　In resolving the summary judgment motion, the court examines the pleadings,

25  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.

26  See Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

1  477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

2  court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

3  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

4  produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

5  Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

6  1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

7  show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

8  as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

9  'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

10        On August 1, 2003, the court advised plaintiff of the requirements for opposing a

11  motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154

12  F.3d 952 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

13  **III.    Discussion**

14        Plaintiff contends that defendants burdened his free exercise of religion by failing

15  to provide him with bag meals to eat after sundown during Ramadan and by failing to provide

16  Muslim services on Fridays.  (Am. Compl. 2-3.)  Prisoners have long been understood to retain

17  some measure of the constitutional protection afforded by the First Amendment's Free Exercise

18  Clause.  See Pell v. Procunier, 417 U.S. 817, 822 (1974).  However, a court must balance the

19  constitutional protections afforded prison inmates, including the right to free exercise of religion,

20  against the interests of prison officials charged with complex duties arising from administration of

21  the penal system.  See O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987).  Thus, to state a

22  First Amendment free exercise of religion claim, a prison plaintiff must allege that prison officials

23  burdened his practice of religion by preventing him from conduct mandated by his faith without

24  any justification reasonably related to legitimate penological interests.  See Freeman v. Arpaio,

25  125 F.3d 732, 736 (9th Cir. 1997).

26  ///

1    Here, there is no dispute as to the sincerity of plaintiff's religious beliefs.  The

2 court has found that plaintiff has established a triable issue of material fact as to whether

3 defendants' actions substantially burdened his religious practices.

4    Defendants argue that any burden their conduct places on plaintiff's religious

5 beliefs is constitutional because defendants' conduct was reasonably related to a legitimate

6 penological interest.  Defendants aver that county policies allow volunteer religious leaders to

7 come to the jail, after an approval process, but do not allow inmates to gather together

8 themselves.  The county states that the policy of not allowing prisoners to gather together for

9 services is rationally related to the goal of maintaining the jail and that plaintiff had other options

10 to express his beliefs, such as praying in his cell or reading the Koran in the prison library.

11 Defendants' arguments, however, ignore the crux of plaintiff's complaints—that prison officials

12 made no effort to procure the services of a volunteer Muslim Cleric for services and that prison

13 officials refused to provide bag meals for plaintiff to eat after sundown during Ramadan.  While

14 the court is mindful that prison regulations are judged under a less restrictive reasonableness

15 standard, the court must also inquire whether prison regulations which restrict inmates' First

16 Amendment Rights operate in a neutral fashion.[2]  See Turner v. Safley, 482 U.S 78,  89 (1987).

17 In short, defendants have not shown that the burdens complained of by plaintiff were reasonably

18 related to a legitimate penological interest.  See Ward v. Walsh, 1 F.3d 873, 879 (9th Cir. 1993)

19 ("abbrogation of [the right to be provided with food that satisfies the dietary laws of a prisoner's

20 religion] cannot be satisfied by the rote recitation of the O'Lone standard.")

21    Having concluded that there exists a triable issue of material fact as to whether

22 defendants' conduct burdened plaintiff's First Amendment rights, the court considers defendants'

23 alternative grounds for summary judgment–no municipal liability and qualified immunity from

24 suit.

25

26    [2]Plaintiff asserts in his deposition that Christians and Jewish inmates were getting religious services.  (Pl.'s Dep. 58:22-25, 59:1-5.)

1       **Municipal Liability**

2            A municipality is not subject to liability for the constitutional violations of its

3   employees based on <u>respondeat superior</u>, but it is subject to liability for its employees'

4   constitutional violations resulting from official policy, custom, or practice of deliberate

5   indifference to the rights of individuals.  <u>See</u> <u>Monell v. Department of Social Services of the City</u>

6   <u>of New York</u>, 436 U.S. 658 (1978).  A policy is a choice made by an official with final decision-

7   making authority to follow a course of action from among various alternatives.  <u>See</u> <u>Oviatt v.</u>

8   <u>Pearce</u>, 954 F.2d 1470, 1477 (9th Cir. 1992).  A policy of inaction may also constitute grounds for

9   suit where the failure "amounts to deliberate indifference to the rights of persons'" impacted by

10  the inaction.  <u>Canton v. Harris</u>, 489 U.S. 378, 388 (1989).  To establish liability on a local

11  governmental entity for failure to act to preserve constitutional rights in a civil rights suit, a

12  plaintiff must establish: (1) that he possessed a constitutional right of which he was deprived; (2)

13  that the municipality had a policy; (3) that this policy amounts to deliberate indifference to

14  plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional

15  violation.  <u>See</u> <u>id.</u> at 389-91.  A municipality is deliberately indifferent to a person's

16  constitutional rights when the need for more or different action is obvious and the inadequacy of

17  the action taken so likely to result in the violation of constitutional rights, that the policymakers

18  reasonably can be said to have been deliberately indifferent to the need.  <u>See</u> <u>Oviatt</u>, 954 F.2d at

19  1477-78.

20          With these principles in mind, the court considers plaintiff's claims against

21  defendant Joaquin County Jail and defendants Dunn and Hamilton, in their official capacities[3] to

22  determine whether plaintiff's alleged constitutional deprivations resulted from official policy,

23  custom, or practice of deliberate indifference to the rights of individuals.

24  _____

25          [3]Official capacity suits filed against municipal employees are merely an alternative way
    of pleading an action against the entity of which the defendant is an officer.  <u>See</u> <u>e.g.</u>, <u>Hafer v.</u>
26  <u>Melo</u>, 502 U.S. 21, 25 (1991).

1    Plaintiff has established that he was denied his constitutional right to free exercise

2 of his religious beliefs.  See  Freeman v. Arpaio, 125 F.3d 732, 736 (9th Cir. 1997) (free exercise

3 violation established when prisoner shows that defendants burdened the practice of his religion by

4 preventing prisoner from engaging in conduct that was mandated by his faith).

5    The court must next consider whether plaintiff has demonstrated that the San

6 Joaquin County Jail had a policy which deprived plaintiff of his constitutional rights.  A "decision

7 to adopt [a] particular course of action...by th[e] government's authorized decisionmakers...surely

8 represents an act of official governmental 'policy.'" Pembaur v. City of Cincinnati, 475 U.S. 469,

9 481 (1986)(plurality opinion).  In other words, a policy is a deliberate choice to follow a course of

10 action "made from among various alternatives by the official or officials responsible for

11 establishing final policy with respect to the subject matter in question." Id. at 483-84.

12    There is no question that Sheriff Baxter Dunn was the final policy maker with

13 respect to practices in the San Joaquin County Jail.[4]  Plaintiff alleges that he had his "mom call

14 and talk to the Sheriff about our problem, but they passed it back down to Sergeant Hamilton and

15 nothing was ever done." (Am. Compl.at 3:19-21.)  Plaintiff also claims that "the write ups [he]

16 wrote on staff was never answered." (Id.)  Defendant Dunn offers nothing to rebutt plaintiff's

17 statements that Dunn was aware of the problem.   Accepting the allegations as true and viewing

18 the facts in a light most favorable to plaintiff, defendant Dunn knew that plaintiff was being

19 denied religious dietary needs during Ramadan and being denied permission to attend services

20 during Ramadan, and he did nothing to remedy the situation.  As plaintiff contends that he was

21 denied bag meals and services throughout the entire month of Ramadan, the court finds that

22 defendant Dunn's inaction established an official policy. See e.g., Anela v. Wildwood, 790 F.2d

23 1063, 1067 (3rd Cir. 1986) (stating that where evidence revealed long-standing condition of

24 shortages of beds in prison and City offered no evidence to rebut, the condition constituted a

25 

_____

26    [4]See Brandt v. Board of Supervisors, 84 Cal.App.3d 598 (1978) ("The responsibility for
  operating jails in this state is placed by law upon the Sheriff.")

1  custom such that the City could be liable under Monell).

2  　　　　The existence of a policy, without more, is not sufficient to trigger local

3  government liability under 42 U.S.C. § 1983.  Canton, 489 U.S. at 388-89.   A plaintiff must

4  demonstrate that the official policy evidences a "deliberate indifference" to his constitutional

5  rights. See id. at 389.  This occurs when the need for more or different action "is so obvious, and

6  the inadequacy [of the  current procedure] so likely to result in the violation of constitutional

7  rights, that the policymakers ⋯ can reasonably be said to have been deliberately indifferent to the

8  need." Id. at 390, 109 S.Ct. at 1205. Whether a local government entity has displayed a policy of

9  deliberate indifference is generally a question for the jury. See Davis v. Mason County, 927 F.2d

10 1473, 1482 (9th Cir.), cert. denied,502 U.S. 899 (1991) (overruled on other grounds).

11 　　　　Accordingly, the court finds that whether liability should be imposed on San

12 Joaquin County Jail and defendants Dunn and Hamilton, in their official capacities, cannot be

13 ascertained without the resolution of this factual issue.  For this reason, the court finds that

14 summary judgment on the issue of municipal liability is not appropriate.

15 　**Qualified Immunity**

16 　　　　"[G]overnment officials performing discretionary functions [are entitled to] a

17 qualified immunity, shielding them from civil liability as long as their actions could have

18 reasonably been thought consistent with the rights they are alleged to have violated."

19 See Anderson v. Creighton, 483 U.S. 635, 638 (1987) (citations omitted).  The Supreme Court

20 has clarified that the qualified immunity analysis is a three-part inquiry.  See Saucier v. Katz, 533

21 U.S. 194, 201 (2001).  First, the court must consider whether the facts taken in a light most

22 favorable to the party asserting the injury show that the defendants violated the plaintiff's

23 constitutional right.  See id.  Next, the court must determine if the right was clearly established at

24 the time of the alleged violation.  See id.   Finally, the court must determine whether a reasonable

25 officer in these circumstances would have thought that his or her conduct violated the alleged

26 right.  See id.

1        When identifying the right allegedly violated by defendants, a court must define

2 the right more narrowly than the constitutional provision guaranteeing the right, but more broadly

3 than the factual circumstances surrounding the alleged violation.  See Watkins v. City of Oakland,

4 145 F.3d 1087, 1093 (9th Cir. 1998).  For instance, a statement that the Eighth Amendment

5 guarantees medical care without deliberate indifference to serious medical needs is a narrow

6 statement of the right for conducting the clearly established inquiry.  See Kelly v. Borg, 60 F.3d

7 664, 667 (9th Cir. 1995).  In the present case, the court finds that the First Amendment guarantees

8 that plaintiff has the right to freely exercise his religious beliefs and practices. see McElyea v.

9 Babbit, 833 F.2d 196, 197 (9th Cir. 1987)(per curiam), and that defendants Dunn and Hamilton

10 violated that right.

11        The court's next inquiry is whether defendants violated a clearly established right;

12 if not, then defendants are immune from suit.  A constitutional right is clearly established if the

13 contours of the right are sufficiently clear that a reasonable official would understand that what he

14 or she was doing violated that right.  See Anderson, 483 U.S. at 640; Act Up/Portland v. Bagley,

15 988 F.2d 868, 871 (9th Cir. 1993).  A particular right may be clearly established for purposes of

16 qualified immunity if the trend of relevant case law indicates that recognition of that specific right

17 is inevitable.  See Cleavland-Perdue v. Brutsche, 881 F.2d 427 (7th Cir. 1989).

18        To determine whether there is a clearly established right to have the County

19 provide religious services on Fridays for Muslim inmates who request them " in the absence of

20 binding precedent, a court should look to all available decisional law, including the decision of

21 state courts, other circuits and district courts."  Ward v. County of San Diego, 791 F.2d 1329,

22 1332 (9th Cir. 1986).

23        Under clearly established law, prison officials are not required to provide special

24 services for every denomination, so long as inmates are afforded a "reasonable opportunity" to

25 worship in accordance with their conscience.  See Johnson v. Moore, 948 F.2d 517, 520 (9th Cir.

26 1991).  Prison officials have no affirmative obligations to provide appropriate clergy for inmates.

1  See Ward v. Walsh, 1 F.3d 873, 880 (9th Cir. 1993) (stating it is well-established that plaintiff's

2  do not have a free exercise right to be provided with religious materials); Reimers v. Oregon, 863

3  F.2d 630, 631-32 (9th Cir. 1989).  Preventing Muslim prisoners from attending religious services

4  does not violate the constitution because the Muslim prisoners were not "deprived of all forms of

5  religious exercise, but instead freely observe a number of their religious observations."  O'Lone

6  v. Estate of Shabazz, 482 U.S. 342, 352 (1987).

7              In light of the above mentioned case law, the court finds that there is no clearly

8  established right for prison officials to provide special religious services for Muslims.

9  Defendants state that Muslim prisoners are afforded a reasonable opportunity to worship in

10 accordance with their beliefs by praying quietly in their cells or by reading a copy of the Koran,

11 which is available in the jail library.   As the court finds that there is no clearly established right

12 to provide special services for Muslims, it concludes that defendants Dunn and Hamilton are

13 entitled to qualified immunity on this issue.

14             The court next considers whether defendants Dunn and Hamilton are entitled to

15 qualified immunity for their alleged conduct of not providing plaintiff bag meals to eat after-

16 sundown during Ramadan.

17             As stated above, the court finds that defendants conduct violated plaintiff's First

18 Amendment right to freely exercise his religious beliefs.  See McElyea, 833 F.2d at 197.  The

19 court next considers whether there is a clearly established right to an after-sundown meal during

20 Ramadan for Muslim prisoners who request them.

21             As mentioned above, a particular right may be established for purposes of

22 qualified immunity if the trend of relevant case law indicates that recognition of that specific right

23 is inevitable.  See Ward v. County of San Diego, 791 F.2d at 1332.  Under established law, prison

24 authorities must generally accommodate the rights of prisoners to receive a diet consistent with

25 their religious beliefs.  See McElyea, 833 F.2d at 198 ("Inmates ⋯ have the right to be provided

26 food sufficient to sustain them in good health that satisfies the dietary laws of their religion⋯");

1   see also 28 C.F.R. §§ 547.20(d), 548.13(a). The right of prisoners to a diet that satisfies their

2   religious beliefs is secure unless the cost of providing the requested diet is "prohibitive" or

3   "administratively unfeasible." See Benjamin v. Coughlin, 905 F.2d 571, 579 (2d Cir.), cert.

4   denied,498 U.S. 951 (1990) (summarizing the test of O'Lone v. Estate of Shabazz, 482 U.S. 342

5   (1987)). Thus, clearly establishes law requires prison officials to accede to prisoner requests for

6   religious diets absent a legitimate penological justification for their refusal.

7           In the instant case, no legitimate penological interest has been advanced which

8   would justify the refusal to provide bag meals to eat after sundown during Ramadan to Muslim

9   prisoners who request them. In fact, the record reveals that the San Joaquin County Jail did

10  provide meals to eat after sundown during Ramadan.  (Decl. of Kristen Hamilton 2:4-6.)

11  This court therefore finds, as a matter of law, that the law requiring the availability of after-

12  sundown meals during Ramadan to Muslim prisoners who request them is clearly established.[5]

13  As a result, defendants Baxter and Dunn cannot assert qualified immunity based on uncertainty in

14  the law or the law's application to this case.

15          The court's final inquiry is whether at the time of the challenged conduct, and in

16  light of the information possessed by Hamilton and Dunn, a reasonable official would have

17  understood that Hamilton's and Dunn's actions in failing to ensure that plaintiff was receiving

18  after-sundown meals during Ramadan violated plaintiff's clearly established First Amendment

19  rights.  See Anderson, 483 U.S. at 640-41.

20          In order to ascertain the reasonableness of each defendants conduct, it is first

21  necessary to ascertain whether each defendant has sufficient notice of the alleged violations of

22  plaintiff's constitutional rights so as to create a duty to inquire whether plaintiff's religious

23

24      [5]In their motion for summary judgment, defendants assert that there is no "clearly established obligation to provide [plaintiff] with two nighttime meals, and that officers in the shoes of Hamilton and Dunn would not have believed their conduct was [unlawful]."  However,

25  plaintiff asserts that he got only two nighttime meals during Ramadan.  Therefore, the court's inquiry is not whether it is clearly established that plaintiff was entitled to two nighttime meals,

26  but whether it is clearly established that plaintiff is entitled to a nighttime meal during Ramadan.


1   dietary needs were being met.

2         In his amended complaint, plaintiff states that he "had [his] mom call the sheriff

3   about [not getting bag meals], but they passed it back down to Sergeant Hamilton and nothing

4   was ever done." (Am. Compl. 3:19-21.) In his deposition, plaintiff states that his mother called

5   "Sergeant Hamilton about the services were weren't [sic] getting and about the bag meals...."

6   Defendant Dunn, the Sheriff, has not submitted any declaration indicating that plaintiff's mother

7   did not make him aware that plaintiff was being denied after-sundown meals. Plaintiff's

8   statement in his complaint that his mother called and talked to the Sheriff about the bag meals is

9   sufficient to raise a genuine issue of material fact concerning the sufficiency of notice to

10  defendant Dunn that plaintiff's dietary needs were not being met. The objective reasonableness

11  of defendant Dunn's conduct cannot be ascertained without resolution of this factual issue. For

12  this reason, the court finds that summary judgment for defendant Dunn on the affirmative defense

13  of qualified immunity on the issue of whether plaintiff was receiving after-sundown meals is

14  improper.

15        It is undisputed that defendant Hamilton had sufficient notice of the alleged

16  violation of plaintiff's constitutional rights so as to create a duty to inquire whether plaintiff's

17  religious dietary needs were being met. Plaintiff's complaint and deposition state that plaintiff

18  spoke with defendant Hamilton about the jail's failure to provide bag meals during Ramadan, and

19  defendant Hamilton does not state that she was unaware of plaintiff's ability to secure his

20  religious diet. It is well established that prison officials must accommodate religious dietary

21  needs absent a legitimate penological justification for their refusal. Further, the record establishes

22  that the San Joaquin County Jail had a policy of accommodating the religious dietary needs of

23  prisoners and that defendant Hamilton is in charge of overseeing religious programs and services

24  offered to inmates. (Decl. of Kristen Hamilton 1:22-26.) Accordingly, the court concludes that

25  defendant Hamilton's alleged denial of plaintiff's religious dietary needs was not reasonable.

26  Therefore, the court finds that summary judgment for defendant Hamilton on the affirmative

1 defense of qualified immunity on the issue of whether plaintiff was receiving after-sundown

2 meals is improper.

3 **IV.     Conclusion**

4          Based on the foregoing, IT IS RECOMMENDED that:

5          1.  Defendants' motion for summary judgment on the basis that no municipal

6 liability exists be DENIED;

7          2.  Defendants' motion for summary judgment on the basis of qualified immunity

8 be granted in part and denied in part;

9          3.  Summary judgment on the basis of qualified immunity be GRANTED with

10 respect to plaintiff's claims that defendant Baxter Dunn, in his individual capacity and defendant

11 Kristen Hamilton, in her individual capacity, violated plaintiff's right to freely exercise his

12 religious beliefs by not providing Friday services for Muslims;

13          4.  Summary judgment on the basis of qualified immunity be DENIED with

14 respect to plaintiff's claims that defendant Baxter Dunn, in his individual capacity and defendant

15 Kristen Hamilton, in her individual capacity, violated plaintiff's right to freely exercise his

16 religious beliefs by not providing plaintiff with after-sundown meals during Ramadan; and

17          5.  This action proceed on plaintiff's First Amendment claims against San Joaquin

18 County Jail and defendants Dunn and Hamilton, in their official capacities, and on plaintiff's

19 claim that defendants Dunn and Hamilton, in their individual capacities, violated his First

20 Amendment right to freely exercise his religious beliefs by failing to provide him with after-

21 sundown meals during Ramadan.

22          These findings and recommendations are submitted to the United States District

23  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

24 days after being served with these findings and recommendations, plaintiff may file written

25 objections with the court.  The document should be captioned "Objections to Magistrate Judge's

26 Findings and Recommendations."  Plaintiff is advised that failure to file objections within the

1  specified time may waive the right to appeal the District Court's order. See Martinez v. Ylst, 951

2  F.2d 1153 (9th Cir. 1991).

3

4  DATED:   May 9, 2006.

5

6                                                          _____
                                                           **CRAIG M. KELLISON**
7                                                          UNITED STATES MAGISTRATE JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26