**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

KIFA MUHAMMAD, No. CIV S-02-0006-LKK-CMK-P

Plaintiff,

vs. ORDER

SAN JOAQUIN COUNTY JAIL, et al.,

Defendants.

_______________________________/

Plaintiff, a state prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pursuant to court order, the parties have submitted pre-trial statements. Upon review of the statements and the remainder of the file, and good cause appearing therefor, this court makes the following findings and orders:

Background

This action proceeds on plaintiff's first amended complaint (Doc. 11) filed April 23, 2003. Plaintiff brings this action alleging violation of his First Amendment right to free exercise of his religious beliefs. Plaintiff was incarcerated at the San Joaquin County Jail at all times relevant to his complaint. Plaintiff is a practicing Muslim and, in keeping with his Islamic faith, observes Ramadan, which requires fasting from sunup to sundown. Ramadan lasts for

thirty days. Plaintiff states that he requested jail officials to make accommodations to allow him to eat after sundown during Ramadan in 2001. However, plaintiff alleges that jail officials ignored his request for accommodation and, when they did provide bag meals, did so for only a couple of days. Plaintiff also alleges that jail officials refused to provide Friday services for Muslims.

Defendants filed a motion to dismiss on October 14, 2003. This motion was granted in part and plaintiff's state-law claims against the San Joaquin County Jail were dismissed.[1] (Docs. 25, 27). The defendants then filed a motion for summary judgment on August 12, 2005. This motion was granted in part and denied in part. (Docs. 70, 72, 76). Accordingly, this case proceeds on plaintiff's First Amendment violation claims against defendants San Joaquin County Jail, Dunn and Hamilton, in their official capacities, and against defendants Dunn and Hamilton, in their individual capacities, as to plaintiff's claims of violation of his right to freely exercise his religious beliefs by failing to provide him with after sundown meals during Ramadan.[2]

Jurisdiction and Venue

This case raises a federal question under 42 U.S.C. § 1983. Therefore, jurisdiction is predicated upon 28 U.S.C. § 1331. Venue is proper in this court.

Jury/Non-Jury

Both parties have timely requested trial by jury.

Undisputed Facts

The following facts are undisputed:

---

[1] Plaintiff's complaint also named defendants Stan Hein and Desoto. The court found the complaint did not state a cognizable claim against these defendants and dismissed them from this case. (Docs. 24, 26).

[2] Defendants Dunn and Hamilton are entitled to qualified immunity as to the claims against them, in their individual capacity, regarding plaintiff's claims that they failed to provide Friday services for Muslims. (Doc. 76).

1. Plaintiff Muhammad was incarcerated in San Joaquin County Jail from August 2001 to February 2002.

2. Plaintiff is a practicing Muslim.[3]

3. In 2001, Ramadan ran between November 17, 2001 and December 16, 2001.

Disputed Facts

According to defendants, the following facts are in dispute:

1. During Ramadan 2001, breakfast was served to all inmates at 5:00 a.m, before sunrise.

2. Plaintiff decided to skip breakfast during Ramadan 2001.

3. Upon request, dinner was offered to all Muslim inmates observing Ramadan at 7:00 p.m., after sundown.

4. Plaintiff did not submit any request for special dietary needs during Ramadan 2001 until November 27, 2001.

5. Once plaintiff's request had been made, plaintiff was offered either a sack lunch or hot tray meal nightly, after sundown, for the remainder of Ramadan 2001.

6. Plaintiff demanded two meals to eat at night, his nighttime meal in addition to his lunch meal he voluntarily skipped.

7. The San Joaquin County Jail has a policy that inmates are not allowed to store a lunch in cells for hours before consuming it, due to health and safety concerns.

8. Plaintiff cannot present any facts that he or any other Muslim inmate was denied Friday religious services during Ramadan 2001, or at any other time.

9. In 2001, the San Joaquin County Jail had a policy that allowed local religious leaders, regardless of denomination, to visit the jail for purposes of holding religious

---

[3] Defendants do not list this as an undisputed fact, but it does not appear that they contend otherwise.

services.

10. During 2001, no Muslim spiritual leader, or Imam, ever submitted an application to the San Joaquin County Jail to minister to inmates, nor did plaintiff ever request a Muslim spiritual leader visit the County Jail.

11. The San Joaquin County Jail maintains its own library, and a copy of the Koran is available to any inmate who requests it.

According to plaintiff, the following facts are in dispute:

1. Plaintiff requested bag lunches around November 12, 2001 and November 15, 2001 so he would not have to eat breakfast since the sun would appear to be coming up.

2. Plaintiff did not receive the bag lunch or anything he had requested until November 27, 2001, and then only for a few days.

3. An inmate case worker brought a form for plaintiff to sign on November 27, 2001, but then stopped honoring it a few days later.

4. Plaintiff asked an inmate case worker about "Muslim services and bringing Muslims some Qurans."

5. No one ever came to hold Muslim services.

6. Muslim inmates tried to hold their own services on Friday, but plaintiff was denied the ability to lead the Muslim service and prayers by jail staff.

7. Plaintiff was never told about any application to fill out to minister for inmates.

<u>Disputed Evidentiary Issues</u>

None noted by either party.

<u>Relief Sought</u>

Plaintiff states he is asking for two hundred dollars ($200.00) and one thousand dollars ($1,000.00) for books to be placed in the San Joaquin County Jail library.

Defendants seeks judgment in their favor.

Legal Issues

The issues in this case are whether the defendants violated plaintiff's right to the free exercise of his religion by failing to provide him appropriate meals during Ramadan and failure to provide him Friday services. Plaintiff's first amended complaint raises these claims under the First Amendment. He does not specifically raise a claim under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1. Plaintiff has not referenced RLUIPA in any of his pleadings filed with this court or in his oppositions to the motions filed by defendants.[4] However, in his complaint, plaintiff alleges that although he put in a request for bag lunches, he did not receive them. It was not until he spoke with an inmate case worker on November 27, 2001, who then had him fill out a specific request form, that some of the Muslim inmates received bag lunches. Some Muslim inmates then received the bag lunches until November 28, 2001. In addition, plaintiff states that the prison officials refused a request for religious services on Friday.

The Ninth Circuit has found that if a complaint contains "factual allegations establishing a 'plausible' entitlement to relief under RLUIPA, [plaintiff has] satisfied the minimal notice pleading requirements of Rule 8 of the Federal Rules of Civil Procedure." Alvarez v. Hill, – F.3d –, 2008 WL 659570 at *3 (9th Cir. 2008). It is possible, therefore, for a plaintiff to state a claim for violation of the right to free exercise of religion under both the First Amendment and RLUIPA. But see Henderson v. Terhune, 379 F.3d 709 (9th Cir. 2004) (finding

---

[4] The court does note, however, that plaintiff cites to the Religious Freedom Restoration Act ("RFRA") in his objections to findings and recommendations (Doc. 75). RFRA has been invalidated. See Freeman v. Arpaio, 125 F.3d 732, 736 (9th Cir. 1997). In addition, in his request for leave to file an amended complaint (Doc. 81), plaintiff specifically referred to RLUIPA, and requested permission to file an amended complaint to raise his claims under RLUIPA. However, his request was denied (Doc. 82) because plaintiff failed to provide the court with a copy of his proposed amended complaint and because he had filed an interlocutory appeal which effectively deprived this court of jurisdiction over this matter until the appeal was decided. Plaintiff did not renew his request following the denial of his interlocutory appeal. The court also notes that plaintiff did not specifically serve his request (Doc. 82) on the defendants. Defendants presumably received notification of his request through the electronic filing system.

that plaintiff stated a claim under the First Amendment only, and not RLUIPA, because the plaintiff failed to raise RLUIPA at any stage of the proceedings).

The United States Supreme Court has held that prisoners retain their First Amendment rights, including the right to free exercise of religion. See O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987). Thus, for example, prisoners have a right to be provided with food sufficient to sustain them in good health and which satisfies the dietary laws of their religion. See McElyea v. Babbit, 833 F.2d 196, 198 (9th Cir. 1987). Inmates also must be given a "reasonable opportunity" to pursue their faith comparable to that afforded fellow prisoners who adhere to conventional religious precepts. See Cruz v. Beto, 405 U.S. 319, 322 (1972). Prison officials are required to provide prisoners facilities where they can worship and the opportunity for clergy or spiritual leaders to visit the prison. See Glittlemacker v. Prasse, 428 F.2d 1, 4 (3rd Cir. 1970). Officials are not required to supply clergy at state expense. See id.

However, the court has also recognized that limitations on a prisoner's free exercise rights arise from both the fact of incarceration and valid penological objectives. See McElyea, 833 F.2d at 197. For instance, the penological interest in a simplified food service has been held sufficient to allow a prison to provide orthodox Jewish inmates with a pork-free diet instead of a completely kosher diet. See Ward v. Walsh, 1 F.3d 873, 877-79 (9th Cir. 1993). Similarly, prison officials have a legitimate penological interest in getting inmates to their work and educational assignments. See Mayweathers v. Newland, 258 F.3d 930, 38 (9th Cir. 2001) (analyzing Muslim inmates' challenge to prison work rule).

Prison regulations alleged to infringe on the religious exercise right of the First Amendment must be evaluated under the "reasonableness" test set forth in Turner v. Safley, 482 U.S. 78, 89-91 (1987). See O'Lone, 382 U.S. at 349; Shakur v. Schriro, 514 F.3d 878, 885 (9th Cir. 2008). In determining the reasonableness of a challenged restriction on First Amendment rights, the court considers four factors. First, there must be a valid, rational connection between the prison regulation and the legitimate government interest put forward to justify it, and the

governmental objective must itself be a legitimate and neutral one. A second consideration is whether alternative means of exercising the right on which the regulation impinges remain open to prison inmates. A third consideration is the impact accommodation of the asserted right will have on guards, other inmates, and the allocation of prison resources. Finally, the absence of ready alternatives is evidence of the reasonableness of a prison regulation. See Allen v. Toombs, 827 F.2d 563, 567 (9th Cir. 1987) (citing Turner, 482 U.S. at 89-91).

To prevail under the First Amendment, the prisoner must establish that his religious belief is sincerely held and that his claim is rooted in religious belief. See Shakur, 514 F.3d at 884-85 (citing Malik v. Brown, 16 F.3d 330 (9th Cir. 1994); Callahan v. Woods, 658 F.2d 679 (9th Cir. 1981)).

RLUIPA provides that "[n]o [state or local] government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution," unless the government shows that the burden furthers "a compelling governmental interest" and does so by "the least restrictive means." 45 U.S.C. § 2000cc-1(a)(1)-(2). "RLUIPA . . . accord[s] religious exercise heightened protection from government-imposed burdens . . . ." Cutter v. Wilkinson, 544 U.S. 709, 714 (2005). "RLUIPA thus protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." Id. at 721.

In enacting RLUIPA, Congress replaced "the 'legitimate penological interest' standard articulated in Turner v. Safley, 482 U.S. 78, 89 (1987), with the 'compelling governmental interest' and 'least restrictive means' tests." Warsoldier v. Woodford, 418 F.3d 989, 994 (9th Cir. 2005), see also Cutter, 544 U.S. 717. "[N]o longer can prison officials justify restrictions on religious exercise by simply citing to the need to maintain order and security in a prison." Green v. Solano County Jail, 513 F.3d 982, 989-90 (9th Cir. 2008). Now the prison must demonstrate that they "actually considered and rejected the efficacy of less restrictive measures before adopting the challenged practice." Warsoldier, 418 F.3d at 999.

The parties are directed to brief the elements, standards, defenses, and burden of proof relevant to this case by filing trial briefs with this court no later than 14 calendar days prior to the date of trial in accordance with Eastern District of California Local Rule 16-285.

Witnesses

Plaintiff intends to testify on his own behalf. Plaintiff does not intend to call any witnesses.

Defendants intend to testify on their own behaves. Additionally, defendants intend to call the following witnesses:

1. Lieutenant Myron Kelso;
2. Captain Christopher Serpa;
3. Imam Faheem Shuiabe;
4. Imam Zari Usman;
5. Correctional Officer Lenai Eileen Sanchez;
6. Correctional Officer Joni Cannon;
7. Correctional Officer Joshua Peoples;
8. Correctional Officer Fred Wilson;
9. Correctional Officer Dionna Morales;
10. Correctional Officer Kimberly Moule;
11. Correctional Officer Brenda Kramer;
12. Correctional Officer Alexa Cameron; and
13. Expert Witness Bill Naber, jail policy and procedures expert.

The court makes the following orders concerning witnesses:

1. Each party may call any witnesses designated by the other;

2. No other witness will be permitted to testify unless: (a) the party offering the witness demonstrates that the witness is for the purpose of rebutting evidence which could not be reasonably anticipated at the pretrial conference, or (b) the witness was discovered after

the pre-trial order is issued and the proffering party makes the showing outlined below;

3. Upon discovery of witnesses following issuance of this pre-trial order, the party shall promptly inform the court and the opposing party of the existence of the unlisted witnesses so that the court may consider at trial whether the witnesses shall be permitted to testify;

4. Such newly discovered witnesses will not be permitted to testify unless: (a) the witnesses could not reasonably have been discovered prior to pretrial; (b) the court and the opposing party were promptly notified upon discovery of the witnesses; (c) if time permitted, the party proffered the witnesses for deposition; (d) if time did not permit, a reasonable summary of the witnesses' testimony was provided to the opposing party.

Exhibits

Plaintiff anticipates offering the following exhibits into evidence:

1. Deposition transcript from the deposition of plaintiff;
2. San Joaquin County Jail Procedures and Policies;
3. Plaintiff's signed Religious Diet Request Form;
4. Plaintiff's Responses to Request for Admissions; and
5. Plaintiff's Responses to Written Interrogatories.

Defendants anticipate offering the following exhibits into evidence:

1. Deposition transcript from the deposition of plaintiff;
2. Written discovery responses:
   a. Defendant County of San Joaquin's Responses to Written Interrogatories;
   b. Defendant County of San Joaquin's Responses to Request for Admissions;
   c. Plaintiff's Responses to Written Interrogatories; and
   d. Plaintiff's Responses to Request for Admissions;
3. Expert Reports;

4. Plaintiff's signed Religious Diet Request Form;

5. San Joaquin County Superior Court Minute Order dated January 22, 2002;

6. San Joaquin County Superior Court Minute Order dated February 21, 2002;

7. San Joaquin County Superior Court Abstract of Judgment - Prison Commitment - Determinate dated February 27, 2002;

8. Inmate 24 Hour Clock Schedule - General Population Housing and Administrative Segregation Housing;

9. Jail Incident Reports; and

10. Documents for purposes of rehabilitation and/or impeachment as necessary.

The court makes the following orders concerning exhibits:

1. The parties are directed to bring an original and three copies of each exhibit to trial;

2. The parties shall be prepared to exchange copies of their exhibits on the first day of trial;

3. Plaintiff will use numbers to mark exhibits;

4. Defendant will use letters to mark exhibits;

5. No other exhibits will be permitted to be introduced unless: (a) the party proffering the exhibit demonstrates that the exhibit is for the purpose of rebutting evidence which could not have been reasonably anticipated; or (b) the exhibit was discovered after the issuance of this order and the proffering party makes the showing required below;

6. Upon the discovery of new exhibits, the parties shall promptly inform the court and opposing party of the existence of such exhibits so that the court may consider at trial their admissibility;

/ / /

7. Such exhibits will not be received unless the proffering party demonstrates: (a) the exhibits could not reasonably have been discovered earlier; (b) the court and the opposing party were promptly informed of their existence; (c) the proffering party forwarded a copy of the exhibit(s) (if physically possible) to the opposing party;

8. If exhibits may not be copied, the proffering party must show that he has made the exhibits reasonably available for inspection by the opposing party; and

9. The original exhibits become the property of the court for purposes of trial.

Stipulations

At this time the parties have reached no stipulations. Defendants anticipate a possible stipulation regarding the authenticity of documentary evidence to eliminate the need for calling the custodian of records.

Amendments and/or Dismissals

None anticipated.

Settlement

Plaintiff proffered a settlement demand, which defendants did not respond.

Attorneys' Fees

No claim is made for attorney fees.

Pre-Trial Motions

Both parties state anticipation of filing motions in limine . Plaintiff has not specified for what his motions in limine will address. Defendants anticipate the motions will seek to preclude prejudicial testimony and commentary from plaintiff and any supporting witnesses.

Plaintiff indicates that defendants have failed to comply with the discovery process. The time for discovery ended in this case on June 17, 2005. Plaintiff previously brought two motions to compel (Docs. 39, 50), which were both denied without prejudice because he failed to serve defendants with copies of his motions. These motions were denied

without prejudice, meaning plaintiff could have brought them again upon proper service on the defendants. Plaintiff failed to do so. All motions necessary to compel discovery were to be filed by the end of discovery, June 17, 2005. All dispositive motions were to be filed by August 12, 2005. (See Docs. 30, 38). At no time prior to his pretrial statement did Plaintiff request an extension of the deadline to file a motion to compel. Plaintiff's time to bring a motion to compel has long since past, and the court will not entertain such a motion on the eve of trial.

Trial Confirmation Hearing

A trial confirmation hearing, to be held by video-conference before the Honorable Lawrence K. Karlton, is hereby set for July 14, 2008 at 11:15 a.m. To facilitate plaintiff's participation in that hearing, the Clerk of the Court shall serve a copy of this order on the litigation coordinator at plaintiff's place of confinement as follows:

Enedelia Donnelly
Litigation Coordinator
Salinas Valley State Prison
31625 Highway 101
P.O. Box 1020
Soledad, CA 93960-1020

Should the parties have any technical questions regarding the video-conference, they should contact the court's Telecommunications Systems Manager, Andre Carrier, at (916) 930-4223.

Trial Date and Estimated Length of Trial

Defense counsel has requested a trial date in October 2008, due to scheduling conflicts with other trials. Plaintiff has not objected to this request. This request is granted. A jury trial is hereby confirmed for commencement on October 15, 2008 at 10:30 a.m. in Sacramento, California, Courtroom 4, before the Honorable Lawrence K. Karlton, United States District Judge. The parties have not provided estimates for the length of trial.

Proposed Voir Dire and Jury Instructions

The parties are referred to Eastern District of California Local Rules 47-162(a) and 51-163(a) regarding proposed voir dire and proposed jury instructions, respectively. The

provisions of said local rules notwithstanding, the parties shall file proposed voir dire and proposed jury instructions, if any and if they have not already done so, not later than 14 calendar days before the date set for trial.

Objections to this Pre-Trial Order

If no objections are filed within 15 days of the date of service of this order, the order will become final without further order of the court. Once final, no objections to this pre-trial order will be considered. If objections are filed, they will be addressed upon the commencement of trial.

IT IS SO ORDERED.

DATED: April 4, 2008

**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE